IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


JACQUELINE M. GARVEY,

    Plaintiff,

vs.                                  CASE NO. 1:07cv21-MP/WCS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____/


## REPORT AND RECOMMENDATION

    This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D). It is recommended that the decision of the Commissioner be reversed and remanded.

**Procedural status of the case**

    Plaintiff, Jacqueline M. Garvey, applied for disability insurance benefits. She alleges that her disability commenced on January 5, 1994. Plaintiff's insured status expired on March 31, 1999, and she must show onset of disability on or before that date. Plaintiff was 53 years old at the time of the administrative hearing (on September

29, 2005), had three years of college, and had past relevant work as a secretary. The Administrative Law Judge found that prior to March 31, 1999, Plaintiff had the residual functional capacity to do her past relevant work as a secretary and was not disabled as defined by Social Security law.

Plaintiff contends that the ALJ erred at step 2 by not finding that, in addition to herniated nucleus pulposus,[1] she had the following "severe" impairments: chronic lung disease; pancreatitis[2] secondary to cystic fibrosis[3]; catamenial hemoptysis[4]; severe osteoporosis[5]; and right total hip replacement with subsequent revision in October, 1997. Plaintiff argues that by not finding these impairments to be "severe," the

---

[1] Nucleus pulposus is an elastic pulpy mass lying in the center of each intervertebral fibrocartilage and regarded as a remnant of the notochord. WEBSTER'S MEDICAL DESK DICTIONARY, Merriam-Webster, Inc. (1986), p. 484.

[2] Pancreatitis is an acute or chronic inflammation of the pancreas. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, available at: http://www.mercksource.com (Medical Dictionary link).

[3] Cystic fibrosis of the pancreas is an autosomal recessive disorder of infants, children, and young adults in which there is widespread dysfunction of the exocrine glands, with signs of chronic pulmonary disease (due to excess mucus production in the respiratory tract), pancreatic deficiency, abnormally high levels of electrolytes in the sweat, and occasionally biliary cirrhosis. Pathologically, the pancreas shows obstruction of its ducts by amorphous eosinophilic concretions, with consequent deficiency of pancreatic enzymes, resulting in steatorrhea and azotorrhea. The degree of involvement of organs and glandular systems may vary greatly, with consequent variations in the clinical picture. Called also fibrocystic disease of the pancreas and mucoviscidosis. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

[4] Hemoptysis is the expectoration of blood or of blood-stained sputum. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

[5] Osteoporosis is the reduction in the amount of bone mass, leading to fractures after minimal trauma. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

Case No. 1:07cv21-MP/WCS

impairments dropped out of the analysis and thus, the ALJ erred in failing to consider them in combination at subsequent steps.

Plaintiff also contends that the ALJ failed to give significant weight to the opinions of treating physicians, particularly with regard the disabling effects caused by her chronic lung disease.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed

all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Legal analysis**

Plaintiff contends that the ALJ's analysis at step 2 was flawed because he did not find several impairments to be "severe."  Plaintiff also contends that the ALJ failed to give substantial weight to the opinions of treating physicians.  It is more efficient here to consider both arguments at the same time because the opinions of treating physicians provide potential evidence relevant to the decision at step 2.

The Administrative Law Judge found that Plaintiff had one "severe" impairment at step 2, a herniated nucleus pulposus. R. 20.  Plaintiff observes that on September 28, 2000, Plaintiff was examined by Runi A. Foster, M.D., on referral concerning possible cystic fibrosis.  R. 234-237.  Dr. Foster noted:

> Her past medical history is significant for (1) chronic lung disease.  (2) Pancreatitis, secondary to cystic fibrosis.  (3) Catamenial hemoptysis.  (4) Severe osteoporosis.  (5) Right total hip replacement with subsequent revision in October 1997.  She has also had a left hip fibular strut graft

>placement and she has had three diskectomies in the lumbar region and
>she has also had left wrist surgery.

R. 235-236.  Plaintiff contends that the ALJ should have found each of these to be "severe" impairments at step 2, and should thereafter have been considered in combination at steps 3, 4, and 5.

At step 2, the issue is whether Plaintiff has shown that she has a condition which has more than "a minimal effect on her ability to:  walk, stand, sit, lift, push, pull, reach, carry, or handle, etc."  Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985) (relying on 20 C.F.R. § 404.1521).  "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

"[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' "  Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986), *citing* Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984), Edwards v. Heckler, 736 F.2d 625, 630 (11th Cir. 1984), and Flynn, 768 F.2d at 1274.  "Step two is a threshold inquiry.  It allows only claims based on the most trivial impairments to be rejected.  The claimant's burden at step two is mild."  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) (clarifying Brady).  A "severe impairment" is a "de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working."  Stratton v. Bowen, 827 F.2d 1447, 1452 n. 9 (11th Cir. 1987), *quoting*

Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985). It also has been characterized by the Supreme Court as a criterion which identifies "at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into consideration." Id., *quoting* Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987).

An erroneous finding as to "severe" impairments at step 2 improperly forecloses a claimant's "ability to demonstrate the merits of her claim for disability with respect to her former work activities." Flynn, 768 F.2d at 1275. Impairments must be evaluated in combination at all stages of the analysis. 20 C.F.R. §§ 404.1523 and 416.923; Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990); Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). Impairments must be evaluated in combination even though some impairments are not severe. Hudson v. Heckler, 755 F.2d 781, 785 and n. 2 (11th Cir. 1985). The Eleventh Circuit has "repeatedly held that an ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled." Davis v. Shalala, 985 F.2d at 534.

The Appeals Council considered these arguments, reversing the ALJ's decision in part and finding that Plaintiff's hip replacement was a "severe" impairment. R. 9. The Appeals Council determined, however, that this impairment "would not cause a further reduction in the claimant's sedentary residual functional capacity." Id.

Dr. Foster said that Plaintiff had "multiple hip surgeries secondary to profound osteopenia and osteoporosis." R. 234. The medical records show that Plaintiff first had

a right hip replacement in December, 1990.  R. 125.  On June 10, 1997, there was evidence of "loosening" and she had a "revision right total hip arthroplasty."  R. 125-129, 118-119.  Imaging on September 28, 1997, revealed that the hip "appears to be in good position."  R. 122.  She had a recurrent dislocation, however, and another surgery on October 21, 1997.  R. 117.  She was released to "weight bear as tolerated as per physical therapy."  R. 115.  By December 19, 1997, it was noted: "She has done well since we saw her last time.  She is not having any pain in her hip and she is getting around well without any support."  R. 113.  There are no other medical notes as to the condition of Plaintiff's hip replacement or her osteoporosis condition prior to the expiration of her insured status on March 31, 1999.  Thus, the determination of the Appeals Council that Plaintiff's hip replacement and related osteoporosis, although "severe" impairments at step 2, would not reduce her residual functional capacity beyond sedentary work, is supported by substantial evidence in the record.

    Neither the Administrative Law Judge nor the Appeals Council mentioned catamenial hemoptysis.  R. 18-25, R. 8-10.  It was not mentioned by Plaintiff when she initiated her claim.  R. 71, 95.  On May 11, 1993, Eloise M. Harman, M.D., commented that Plaintiff "had catamenial hemoptysis in the past, which was successfully treated."  R. 210.  Plaintiff has come forward with no other evidence concerning this condition.  Consequently, the Commissioner did not err in finding that this condition was not a "severe" impairment.

The Appeals Council "conceded" that Plaintiff's cystic fibrosis may now be a "severe" impairment,[6] but found that "the evidence shows that there were no significant physical limitations as a result of this impairment prior to March 31, 1999, the date that the claimant was last insured for Disability Insurance Benefits."  R. 9.  The Appeals Council noted that Dr. Foster had stated in the report of September 28, 2000, that Plaintiff "was not limited from a pulmonary standpoint," and "also noted on June 4, 2001, that the claimant was never hospitalized for cystic fibrosis related to lung disease . . . ."  Id.  Accordingly, the Appeals Council concluded that Plaintiff's cystic fibrosis and lung disease were not "severe" impairments prior to March 31, 1999.  Id.

A primary impairment that may result from cystic fibrosis is impairment of the pulmonary function.  See footnote 3, supra.  On September 28, 2000, Plaintiff's physician, Dr. Foster, said that Plaintiff was "not limited from [a] pulmonary standpoint."  R. 235.  Plaintiff was then enrolled at the University of Florida in criminology, and she walked on campus without limitations.  Id.  On about September 15, 2005,[7] Dr. Foster wrote that he had treated Plaintiff for cystic fibrosis for the prior five years, which would have been from 2001 through 2005.  R. 287.  Dr. Foster said:

> She has severe end stage lung disease and is now dependent on nocturnal oxygen therapy. . . .
>
> She requires frequent antibiotic therapy due to the severity of her lung disease.  Thus, Ms. Garvey qualifies for disability.  In addition, please see the attached spirometric result, which quantifies her lung disease. . . .

---

[6] The decision of the Appeals Council is dated December 18, 2006.

[7] The date of this opinion is indicated in handwriting.  Defendant agrees that this opinion letter was produced in 2005.  Doc. 19, p. 6.

R. 287. Considering both opinions together, it was not error for the Appeals Council to determine that Plaintiff's cystic fibrosis was not severe prior to the expiration of her insured status, on March 31, 1999. Substantial evidence exists in the record to construe Dr. Foster's opinion of disability as covering only the period after March 31, 1999.

On September 22, 2005, however, Dr. Harman also expressed an opinion concerning whether Plaintiff was disabled by cystic fibrosis. Unlike Dr. Foster, Dr. Harman had treated Plaintiff from about 1988 to 1999, squarely within the relevant period. Dr. Harman wrote:

> Jacqueline Garvey is a 53-year old woman with bronchiectasis[8] whom I have followed for this problem from 1988 through 1990 when by means of gene studies she was diagnosed with cystic fibrosis. When I initially saw her in 1988 when she was 36 years old she gave a history of recurrent episodes of bronchitis for 15 years and atypical mycobacterial infection for five years. She was having episodes of coughing up blood approximately twice per month. Over the next several years of follow-up she had frequent exacerbations of her pulmonary conditions requiring courses of intravenous antibiotics one to two times per year. . . . From reviewing my notes it appears that in the early 1990s, the course of Mrs. Garvey's illness worsened. She required more frequent courses of oral, inhaled and intravenous antibiotic therapy. In 1993 and 1994, she required 2 courses each year of intravenous antibiotics and also required several courses of inhaled antibiotics. Eventually, she stopped working because of the severity of her condition in approximately 1994.
>
> In June 2000, after I had not seen the patient for approximately one year she returned for reevaluation. At that time cystic fibrosis gene studies were sent and Mrs. Garvey was found to be heterozygous for two different cystic fibrosis genotypes, consistent with the diagnosis of cystic fibrosis. Her lifelong problems with bronchiectasis, recurrent pancreatitis and

---

[8] Bronchiectasis is the chronic dilatation of the bronchi marked by fetid breath and paroxysmal coughing, with the expectoration of mucopurulent matter. Types are distinguished according to the nature of the dilatations. It is also called also bronchiectasia. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

> recurrent lung infections are therefore explained by cystic fibrosis. Although I have not seen her since 2000, I did spend considerable period of time today reviewing all free [sic] volumes of her chart and from this review I cans [sic] say that I think that Mrs. Garvey was totally and permanently disabled from working beginning in 1993 or 4.  The precise date that she became unable to work is not recorded in this chart, but I would based [sic] this upon the fact that she was seen at frequent intervals with productive cough and difficulty breathing and would have been unable to work during this period.
>
> Objective evidence of the severity of her disease includes chest radiographs dating as early as 1989 which demonstrated moderate bronchiectasis throughout both lung zones.  The patient had a bronchogram done in 1983 which demonstrated severe saccular bronchiectasis.
>
> Looking through the medical record, pulmonary function studies dating to as early as 1988 demonstrated moderate obstructive ventilatory defect. As noted in 1988 the FEV-1 was 1.32 or 44% of predicted.

R. 293-294.

The opinion of a claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence.  Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).  Good cause exists to afford less weight to the opinion of a treating physician "when the:  (1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Phillips v. Barnhart, 357 F.3d 1232, 1240-1241(11th Cir. 2004).

"A physician's retrospective diagnosis is a medical opinion of the claimant's impairments which relates back to the covered period."  Estok v. Apfel, 152 F.3d 636, 639 (7th Cir. 1998) (citations omitted).  "A retrospective diagnosis may be considered

only if it is corroborated by evidence contemporaneous with the eligible period." *Id.*, at 640 (citations omitted). This, it would seem, is simply another way of saying that the opinion of a treating physician need not be given considerable weight if the opinion is inconsistent with or not supported by the contemporaneous medical records. I do not read this case to alter the manner in which the opinion of a treating physician is to be considered. In this circuit, especially, the ALJ must point to substantial evidence in the record to discount the opinion of a treating physician, whether retrospective, contemporary, or prospective.

Defendant argues that the record does not sufficiently corroborate the retrospective opinion of Dr. Harman. The only medical record cited by Defendant for this is an entry on April 6, 1993, four years before the expiration of Plaintiff's insured status. Dr. Harman noted that after an "aggressive" treatment regimen, Plaintiff's pulmonary functions tests improved dramatically compared to previous studies." R. 209. She had an FEV1 of 1.49. *Id.* Dr. Harman said:

> We have discussed at length with her that there is no pulmonary physiologic contraindication to her becoming pregnant based on her pulmonary function tests. However, we have also discussed with her at length that her management will be greatly complicated because of the possible need for IV antibiotic therapy, and/or the limitation of oral antibiotic therapy should she succeed in becoming pregnant. However, there is no absolute contraindication to this young lady becoming pregnant, but from a pulmonary standpoint she certainly would be considered a high risk pregnancy, if only from a management standpoint.

*Id.* On May 11, 1993, a month later, Dr. Harman again noted that there was "no pulmonary contraindication to pregnancy," but said that "[t]his has been complicated by one or two courses of infection *since this conversation* [on April 6, 1993] *took place.*" *Id.*

(emphasis added). As evidence goes, therefore, this is hardly a substantial reason to discount Dr. Harman's retrospective opinion.

The second bit of evidence offered by Defendant as inconsistent with Dr. Harman's retrospective opinion is that on June 10, 1997, it was found that Plaintiff had 22 month old twins. R. 124, 126. She also had a school age son for whom she cared. R. 33. The ALJ noted this evidence, finding that an ability to care for three young children was supportive of a finding of no disability. R. 24. This observation by the ALJ, however, was not made as a reason to fail to give substantial weight to the opinion of Dr. Harman because Dr. Harman's opinion was not presented until the claim reached the Appeals Council. R. 289, 293. In any event, an ability to sustain a family relationship does not show an ability to work if there are debilitating impairments. Hogard v. Sullivan, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990). Evidence of daily activities is often deemed to be not substantial evidence when reviewed against the record as a whole. Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000) ("The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work."); Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (the court must consider the entire record when determining whether the evidence of a claimant's daily activities is substantial evidence for the conclusion that she retains the residual functional capacity to work); Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by Lewis's treating physicians."); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (when considering daily activities, the entire record must be

considered, including the claimant's testimony that she had to lie down after two hours of such work); Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (a conclusory citation to a claimant's "daily activities" as a basis for failing to believe her testimony as to pain was insufficient where there was a medical condition that reasonably could have given rise to the pain described, and, although she testified that she cooked and shopped for herself, she had trouble putting on her clothing).

In summary, the reasons given for failing to give substantial weight to the opinion of Dr. Harman do not constitute substantial evidence for that conclusion. The Commissioner should have found that Plaintiff's cystic fibrosis was a "severe" impairment that existed prior to the expiration of her insured status. This impairment should have been considered in combination with Plaintiff's other "severe" impairment (herniated nucleus pulposus) at steps 3, 4, and 5.

Neither party has addressed the question of whether Plaintiff's cystic fibrosis, either alone or in combination with her herniated nucleus pulposus, meets or equals a listed impairment at step 3. Since neither party has spoken to this issue, the following is provided only to explain what must be carefully considered on remand. Listing 3.04 provides:

> 3.04 *Cystic fibrosis*. With:
>
> A. *An FEV1 equal to or less than the appropriate value specified in table IV corresponding to the individual's height without shoes.* (In cases of marked spinal deformity, see 3.00E.);
>
> Or
>
> B. Episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum) or respiratory failure

>   (documented according to 3.00C), requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for treatment counts as two episodes, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of episodes;
>
>   Or
>
>   C. Persistent pulmonary infection accompanied by superimposed, recurrent, symptomatic *episodes of increased bacterial infection occurring at least once every 6 months and requiring intravenous or nebulization antimicrobial therapy*.

Appendix 1 to Subpart P of Part 404, 20 C.F.R., Listing 3.03 (emphasis added). It is unknown whether Listing 3.04C is evidenced in the treatment record, though Dr. Harman speaks to this point in her opinion. But Listing 3.04A might be satisfied. Plaintiff is 66 inches, or 167 centimeters tall. R. 280. When a person is 167 centimeters tall, Table IV is satisfied with an FEV1 equal to or less than 1.75.[9] *Id.* Dr. Harman noted that in 1988, Plaintiff was tested and had an FEV1 of 1.32. On April 6, 1993, she had

---

[9]Table IV provides:

Table IV
[Applicable only for evaluation under 3.04A—cystic fibrosis]

| Height without shoes (centimeters) | Height without shoes (inches) | FEV1 equal to or less than (L, BTPS) |
|---|---|---|
| 154 or less | 60 or less | 1.45 |
| 155-159 | 61-62 | 1.55 |
| 160-164 | 63-64 | 1.65 |
| 165-169 | 65-66 | 1.75 |
| 170-174 | 67-68 | 1.85 |
| 175-179 | 69-70 | 1.95 |
| 180 or more | 71 or more | 2.05 |

an FEV1 of 1.49.  R. 209.  On October 19, 1999, Plaintiff had an FEV1 level of 1.20.  R. 284.  This appears to be evidence that Plaintiff's cystic fibrosis condition met or was equal to Listing 3.03. during the relevant period.  The court should not attempt to do this analysis, however, without help from the parties.  This is noted simply to point out that the record seems to contain additional significant evidence to support the retrospective opinion of Dr. Harman.

In summary, Defendant has failed to identify substantial evidence for failing to give substantial weight to the opinion of Dr. Harman.  This ordinarily would result in a direction that the opinion of Dr. Harman now be considered to be true.

> The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error. . . .  Where the Secretary has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.

MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

That is not recommended here.  The Commissioner's analysis failed to consider Plaintiff's cystic fibrosis to be a "severe" impairment at step 2.  It should have been found to be a "severe" impairment that existed prior to March 31, 1999.  Since the Commissioner did not find Plaintiff's cystic fibrosis to be a relevant "severe" impairment, that impairment no longer was considered to be a factor to be considered in combination with other impairments.  Plaintiff asks for a remand to correct this analytical error. Doc. 18, p. 21.  Plaintiff is correct.  Analysis at steps 3, 4, and 5 need to be completed by the Commissioner in the first instance.

On remand, if the Commissioner cannot point to substantial evidence in the record to do otherwise, the Commissioner must give substantial weight to the

retrospective opinion of Dr. Harman.  The Commissioner must also fully consider whether Plaintiff's cystic fibrosis, in combination with other "severe" impairments, met or equaled a Listed impairment.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge at step 2 that Plaintiff's hip replacement, osteoporosis, and catamenial hemoptysis were not "severe" impairments, and the determination that Dr. Foster's opinion covered a period after the expiration of Plaintiff's insured status, correctly follow the law and were based upon substantial evidence in the record.  Those findings should be affirmed.

However, the findings of the Administrative Law Judge at step 2 that Plaintiff's cystic fibrosis was not a "severe" impairment failed to correctly follow the law governing the substantial weight to be given to the opinion of treating physician, Dr. Harman, and was not based upon substantial evidence in the record.  The aspect of the decision of the Commissioner should be reversed and remanded.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED** as to the findings at step 2 that Plaintiff's hip replacement, osteoporosis, and catamenial hemoptysis were not "severe" impairments, and the opinion of Dr. Foster as to Plaintiff's cystic fibrosis impairment, but **REVERSED and REMANDED** for further consideration consistent with this report and recommendation as to Plaintiff's cystic fibrosis impairment, the weight to

be given to the opinion of Dr. Harman, consideration of Plaintiff's impairments in combination, and consideration of Plaintiff's impairments at steps 3, 4 and 5.

**IN CHAMBERS** at Tallahassee, Florida, on October 29, 2007.

                                            s/    William C. Sherrill, Jr.
                                            **WILLIAM C. SHERRILL, JR.**
                                            **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**